FILED
CLERK, U.S. DISTRICT COURT

AUG - 1 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIDON TRUST, ALPHA SPACECOM, INC., | CASE NO. CV 05-3295 DT (RCx) |
| Plaintiffs, | ORDER AND OPINION **DENYING** DEFENDANT XUEDONG HU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND **DENYING** DEFENDANT XUEDONG HU'S MOTION TO DISMISS FOR IMPROPER VENUE. |
| vs. | |
| XUEDONG HU, SECURITIES AND EXCHANGE COMMISSION, AND DOES 2-10 | |
| Defendants. | |

DOCKETED ON CM

AUG - 2 2005

C02

I.    **Background**

A.    **Introduction**

This action is brought by Plaintiffs Tridon Trust ("Tridon Trust") and Alpha Spacecom, Inc. ("Alpha Spacecom") (collectively "Plaintiffs") against Defendants Xuedong Hu ("Hu"), the Securities and Exchange Commission

31

("SEC") and Does 2-10  for (1) rescission based on violations of sections 14(a)
and (c) of the Securities Exchange Act of 1934 ("the Williams Act") and for (2)
declaratory relief.  Defendant Hu is a Chinese national, and Defendant SEC is a
governmental agency of the United States of America. (First Amd. Compl. ¶¶ 5-6.)
Defendant Hu moves the Court to dismiss the action pursuant to Federal Rules of
Civil Procedure 12(b) (2) (lack of personal jurisdiction) and 12(b) (3) (improper
venue).

**B.     Factual Summary**

   The following facts are alleged in the First Amended Complaint or
contained within the papers submitted with the current motion:

   Tridon Trust is a shareholder of over ten percent of the total
outstanding shares of Alpha Spacecom, a publicly traded company.  (Id. at ¶ 3.)
Tridon Enterprises Incorporated, a Colorado corporation ("Tridon Enterprises"),
Tridon Trust, and Alpha Sky Investment Limited ("Alpha Sky") entered into a
Share Exchange Agreement ("SEA") resulting in the formation of Alpha
Spacecom, Inc. (Id. at ¶10.)  Upon the closing of the SEA on December 10, 2001,
Alpha Sky owned 100% equity interest in Accuhigh Investments Limited
("Accuhigh"), a British Virgin Islands company, and Tidy Sum Investments
Limited ("Tidy Sum"), a British Virgin Islands company, both of which in turn
owned 100% equity interest in the common stock of Alpha Spacecom Company
Limited ("ASC"). (Id. at ¶ 11.)

   Hu was the managing director of Alpha Sky and ASC. (Id. at  ¶ 13.)
Hu made certain representations to Tridon Trust and Tridon Enterprises that
Tridon Trust contends were the exclusive basis for entering into the SEA. (Id. at
¶¶ 13-14.)  Hu indicated that ASC had a funding agreement (the Lockheed
Memorandum of Understanding, hereinafter "Lockheed MOU") with Lockheed

1   Martin Corporation (Lockheed) to make an equity investment in ASC of $60

2   million under the terms and conditions of a future services contract and that ASC

3   had negotiated cooperative agreements with China Broadcasting Film Television

4   Satellite Co. ("China Broadcasting") and the State Administration of Radio, Film,

5   and Television ("SARFT") ("collectively "China Agreements").  (Id. at ¶¶ 13(A)-

6   (B).)  Hu stated that his relationships with certain key players in China and the

7   Chinese authorities would lead to the development of a satellite broadcast and

8   communications platform providing services to China and surrounding markets.

9   (Id. at ¶ 13.)

10          According to Plaintiffs, a Los Angeles, California-based attorney,

11   David Ficksman, Esq. ("Ficksman") of Loeb & Loeb ("Loeb"), represented Hu

12   and various entities controlled by Hu in the negotiations leading up to the

13   execution of the SEA. (Id. at ¶ 9.)  Tridon Trust and Tridon Enterprises entered

14   into negotiations with Hu that consisted of meetings, phone conversations, and

15   letters with Ficksman and Loeb in Los Angeles all during the 7-8 month period

16   prior to execution of the SEA in December 2001. (Id.)  Plaintiffs have produced an

17   engagement letter dated July 30, 2001.  The letter is from Ficksman, on Loeb

18   letterhead, and addressed to Joe Cheong of ASC.  It identifies the scope of

19   services as: "Our responsibilities on your behalf [(i.e., ASC's)] will be the

20   acquisition of a controlling interest in a U.S. public company by Alpha Spacecom

21   Co. Ltd." (Sien Decl. Ex. 2 ¶ 1.)  Brian Brick ("Brick"), a representative of Tridon

22   Enterprises, stated that "Nils Olliquist [("Olliquist")] on behalf of Hu contacted

23   [Brick] daily because Hu wanted to acquire a publicly traded shell."  (Brick Decl.

24   ¶ 3.)  Brick and Olliquist then traveled to Hong Kong to meet with Hu (at Hu's

25   invitation).  (Id. at ¶ 4.)

26

27

28                                                          3

1   According to Hu, Brick contacted him through an intermediary and
2   traveled to Hong Kong to conduct negotiations with him that led up to the SEA.
3   (Hu Decl. ¶ 3.)  Hu indicates that neither Ficksman nor Shari Watts, Esq.
4   ("Watts") were employed by either him or ASC.  (Id. at ¶ 4.)  Quite to the contrary,
5   Ficksman traveled with Brick to Hong Kong as legal counsel to Tridon
6   Enterprises.  (Id.)  According to Hu:

7           Neither [Hu] nor any other officer or employee of [ASC]
8           have traveled to California for any business, including
9           business or negotiations related to [Alpha Spacecom],
10          [Tridon Enterprises], or the [SEA].

11  (Id. at ¶ 6.)

12          After the closing of the SEA, the proverbial wheels fell off of the
13  wagon.  The China Agreements did not bind any of the agencies involved, and Hu
14  could not come up with a binding contract  to fund the newly created Alpha
15  Spacecom. (First Amd. Compl. ¶15.)  On December 29, 2002, Hu signed
16  irrevocable stock powers ("Stock Powers") for the 9,777,775 of Convertible
17  Preferred B shares of Alpha Spacecom beneficially owned by Hu ("Hu Shares").
18  (Id. at  ¶ 17.)  On January 16, 2003, Hu entered into an agreement with Alpha
19  Spacecom giving Hu eighteen months (by July 16, 2004) to deliver a contract
20  which would fund Alpha Spacecom's business plan, otherwise the Hu Shares
21  would become the property of Ebeling.  (Id.)  The Hu Shares were physically
22  delivered to Ebeling as a good faith gesture on the part of Hu to keep Tridon
23  Trust's confidence in the operation.  (Id.)  Hu failed to acquire a contract
24  providing the necessary funding for Alpha Spacecom, and at a June 21, 2004
25  meeting of the Board of Directors of Alpha Spacecom, Hu resigned as CEO and
26  Director.  (Id. at ¶ 18.)  Around September 2004, Hu changed the Alpha Spacecom
27
28                                          4

1   filing codes and passwords necessary for proper corporate filings with the SEC but

2   Alpha Spacecom was able to obtain new filing codes and passwords to allow it to

3   make necessary filings with the SEC .  (<u>Id.</u> at ¶ 19.)

4            On November 29, 2004, Alpha Spacecom filed a complaint in the

5   Colorado District Court, under Case No. 2004 CV 9819 ("Colorado Action").  (<u>Id.</u>

6   at ¶ 21.)  The plaintiffs were Alpha Spacecom and Tridon Trust, and the

7   defendants were Hu, Alpha Sky, and a Hu director named Jiang Wang ("Wang").

8   The complaint sought declaratory relief, declaratory removal of Hu and Wang as

9   directors, and rescission of the SEA.  (<u>Id.</u>)  On March 30, 2005, the Colorado

10   Court signed an order requiring Alpha Spacecom to hold a special shareholder

11   meeting.  The Colorado Court found that: (1) Hu met the statutory requirements to

12   request that the Court call a special shareholders meeting; (2) Hu remained the

13   beneficial owner of the Hu Shares; (3) Colorado law did not recognize conduct as

14   a means by which corporate officers or directors might resign their positions; (4)

15   Alpha Spacecom failed to remove Hu by resolution of the board of directors on

16   either October 1, 2004 or October 15, 2004 because of the absence of a quorum of

17   the directors;  and, (5) Hu was entitled to vote all of the shares beneficially owned

18   by him at the special shareholders' meeting.  (Compl. Ex. 1 at 19-21.)

19            Hu unilaterally changed the SEC filing codes and passwords without

20   the approval of Alpha Spacecom. (First Amd. Compl. ¶ 29.)  Alpha Spacecom

21   unsuccessfully attempted to reverse the change (but was blocked by Hu) so as to

22   file Form 10-KSB as required by the SEC by April 15, 2005. (<u>Id.</u> at ¶ 30.)  On

23   April 8, 2004, Hu filed with the SEC a Preliminary Schedule 14C Information

24   Statement Pursuant to Section 14(c) of the Williams Act ("Pre 14C") that gave

25   notice of a special shareholders meeting, issued a proxy statement, and solicited a

26   proxy from shareholders. (<u>Id.</u> at ¶ 31.)  However, the Pre 14C omitted an annual

27

28                             5

report of financial statements and was not sent to all shareholders of record. (Id. at ¶¶ 31(A)-(B).)  On April 15, 2005, Plaintiffs' counsel Mark Shoemaker, Esq. ("Shoemaker") contacted Hu's counsel, Ronald Taylor, Esq. ("Taylor") and Andrew Telsey, Esq. ("Telsey") requesting the filing codes and passwords be made available to Alpha Spacecom to file the Form 10-KSB by the 2:30 p.m. (PST) filing deadline. (Id. at ¶ 32.) Hu did not turn over the codes and passwords, nor did he file a Form 10-KSB for Alpha Spacecom by the deadline. (Id. at ¶ 33.) On April 18, 2005, Plaintiffs became aware that the SEC's Edgar Filing Management ("Edgar") would not allow Alpha Spacecom to file any documents without the filing codes and passwords held by Hu. (Id. at ¶ 34.)

   Hu filed a Definitive Schedule 14C Information Statement Pursuant to Section 14(c) of the Williams Act ("Def 14C") with the SEC on April 20, 2005. (Id. at ¶ 35.) The Def 14C gave notice of a Special Meeting of Shareholders of Alpha Spacecom to be held at a prescribed location in Beijing, China on Monday, May 16, 2004 at 11:00 a.m. (Id.) In addition to providing notice of the special shareholder meeting, Hu solicited a proxy from shareholders to vote for directors, a merger and reverse stock split. (Id.) Plaintiffs allege that the Def 14C was defective for the same reasons as the Pre 14C (Id. at ¶¶ 35(A)-(B).) Taylor sent by email to Shoemaker a Notice of Special Meeting of the Board of Directors to be held on Friday, May 13, 2005 at 11:00 a.m. at the same place as the special shareholders meeting. (Id. at ¶ 37.) On May 13, 2005, the noticed Board of Directors meeting did not take place. (Id. at ¶ 38.) The Directors found the door chained and bolted, and the building management informed them that the room specified had not been occupied since January 2005. (Id.) On May 16, 2005, the scheduled special shareholder's meeting did not take place because the directors

6

1  found the meeting place in the same condition as it was on the previous Friday.

2  (Id. at ¶ 39.)

3          Hu filed a Form 12b-25 Notification of Late Filing of form 10-Q

4  ("NTN10Q") pursuant to Rule 12b-25(b) and (c) on May 17, 2005.  (Id. at ¶ 40.)

5  Hu made the following statements under penalty of the criminal repercussions set

6  forth in 18 U.S.C. § 1001:

7        A.   The reasons described in reasonable detail in Part

8              III of this form could not be eliminated without

9              unreasonable effort or expense

10       B.   The subject annual report, semi-annual report,

11             transition report on Form 10-K, 11-K, Form N-

12             SAR, or Form N-CSR or portion thereof will be

13             filed on or before the 15th calendar day following

14             the prescribed due date; or the subject quarterly

15             report or transition report of Form 10-Q, or portion

16             thereof will be filed on or before the fifth calendar

17             day following the prescribed due date.

18       C.   The accountants statement or other exhibit

19             required by Rule 12b-25(c) has been attached if

20             applicable.

21       D.   All other periodic reports required under Section

22             13 or 15(d) of the Securities Exchange Act of

23             1934 or Section 30 of the Investment Company

24             Act of 1940 during the preceding 12 months or for

25             such shorter period that the registrant was required

26             to file such report(s) have been filed.

27

28

1   (Id. at ¶ 40(A)-(D).)

2          Hu filed Amendment No. 1 to Def 14C ("Def 14C/A") giving notice

3   of a shareholder meeting to be held in Beijing on June 13, 2005. (Id. at ¶ 42.) Def

4   14C/A was defective because it omitted an annual report and financial statements,

5   it was not sent to all shareholders of record date of March 30, 2005, and the Def

6   14C/A noticed the record date beyond 70 days from the date of the meeting in

7   violation of Article X, Section 5 of the Bylaws of Alpha Spacecom. (Id. at ¶

8   40(A)-(c).)

9          Shoemaker contacted the Chief Counsel's Division of the SEC's

10  Department of Corporate Finance seeking intervention to allow Plaintiffs to file

11  Form 10-KSB on April 22, 2005. (Id. at ¶ 43.)  On May 16, 2005, the Chief

12  Counsel's office declined to intercede.  (Id. at ¶ 44.)  Alpha Spacecom attempted

13  to file a CD-ROM version of the Form 10-KSB with the SEC on May 23, 2005

14  (Id. at ¶ 41.) The next day, Brian Johnson of the Chief Counsel's Division rejected

15  the attempted filing. (Id. at ¶ 45).  On June 16, 2005, Barbara Jacobs of the SEC's

16  Department of Corporate Finance and Patti Dennis, an SEC Enforcement liaison,

17  declined to intercede to allow the filing of the Form 10-KSB by Alpha Spacecom.

18  (Id. at ¶ 47.)

19         As of the filing of the First Amended Complaint, Hu refused to share

20  the SEC filing codes and passwords with Alpha Spacecom.  (Id. at ¶ 48.)

21  Plaintiffs believe that the SEC refuses to get involved because Hu and his

22  attorneys have used the March 30, 2005 Colorado Court order to block any access

23  by Alpha Spacecom management to make filings.  (Id. at ¶ 49.)

24         **1.      Rescission Based on Violations of Section 14(a) and 14(c) of**

25                **the Williams Act and Declaratory Relief**

26

27

1    Plaintiffs allege that the solicitation of proxies violated the Williams

2 Act because (1) they were not sent to all shareholders of record as required by

3 Sections 14(a)[1] and (c)[2] of the Williams act; (2) they were not accompanied by an

4 annual report or financial statements in the most recent Form 10-KSB as set out in

5

6

7

8

9    [1]Section 14(a) of the Williams Act provides:

10       It shall be unlawful for any person, by the use of the
         mails or by any means or instrumentality of interstate

11       commerce or of any facility of a national securities
         exchange or otherwise, in contravention of such rules

12       and regulations as the Commission may prescribe as
         necessary or appropriate in the public interest or for the

13       protection of investors, to solicit or to permit the use of
         his name to solicit any proxy or consent or authorization

14       in respect of any security (other than an exempted
         security) registered pursuant to section 78l of this title.

15
16    15 U.S.C. § 78(n)(a).

17    [2]Section 14(c) of the Williams Act provides:

18       Unless proxies, consents, or authorizations in respect of
         a security registered pursuant to section 78l of this

19       title...are solicited by or on behalf of the management of
         the issuer from the holders of record of such security in

20       accordance with the rules and regulations prescribed
         under subsection (a) of this section, prior to any annual

21       or other meeting of the holders of such security, such
         issuer shall, in accordance with rules and regulations

22       prescribed by the Commission, file with the Commission
         and transmit to all holders of record of such security

23       information substantially equivalent to the information
         which would be required to be transmitted if a

24       solicitation were made...

25
26
27    15 U.S.C. § 78(n)(c).

28                    9

1  Schedule 14A (§240.14a-101) and required by SEC Rule 14a-3(a);[3] and (3)

2  because SEC Rules 14a-3(b)[4] and 14c-3[5] require that any such solicitation and any

3  _____

4      [3]SEC Rule 14a-3(a) provides:

5          No solicitation subject to this regulation shall be made
           unless each person solicited is concurrently furnished or

6          has previously been furnished with a publicly-filed
           preliminary or definitive written proxy statement

7          containing the information specified in Schedule 14A (§
           240.14a-101) or with a preliminary or definitive written

8          proxy statement included in a registration statement filed
           under the Securities Act of 1933 on Form S-4 or F-4 (§

9          239.25 or § 239.34 of this chapter) or Form –14 (§
           239.23) and containing the information specified in such

10         Form.

11  17 C.F.R. § 240.14a-3(a)

12

13      [4]SEC Rule 14a-3(a) provides:

14         If the solicitation is made on behalf of the registrant,
           other than an investment company registered under the

15         Investment Company Act of 1940, and relates to an
           annual (or special meeting in lieu of the annual) meeting

16         of security holders, or written consent in lieu of such
           meeting, at which directors are to be elected, each proxy

17         statement furnished pursuant to paragraph (a) of this
           section shall be accompanied or preceded by an annual

18         report to security holders as follows:
            NOTE TO SMALL BUSINESS ISSUERS – . . . Small

19         business issuers using the transitional small business
           issuers disclosure format . . . shall provide only the

20         financial statements required to be filed in their most
           recent Form 10-KSB.

21  17 C.F.R. § 240.14a-3(b)

22

23      [5]The pertinent parts of SEC Rule 14c-3 provide:

24         (a) If the information statement relates to an annual (or
           special meeting in lieu of the annual) meeting, or written

25         consent in lieu of such meeting, of security holders at

26

27

28                                    10

1   information regarding such solicitation for a meeting where directors are to be

2   elected be accompanied by an annual report or financial statements in the most

3   recent Form 10-KSB.  (Id. at ¶¶ 54-56, 58-60.)  Allegedly, Hu, purporting to act as

4   an officer of Alpha Spacecom, caused the solicitation and proxy statement dated

5   May 23, 2005 to be filed with the SEC in violation of the aforementioned

6   requirements.  (Id. at ¶ 57.)  Hu set the Alpha Spacecom record date as March 30,

7   2005, in violation of Article X, Section 5 of the Bylaws of Alpha Spacecom, that

8   allowed for a record date no greater than 70 days from the date of the shareholders

9   special meeting (Set for June 16, 2005, more than 70 days after March 30, 2005).

10  (Id. at ¶ 61.)  Plaintiffs assert that they are entitled to rescission of the Proxy

11  Solicitation and any actions taken at the June 13, 2005 shareholders meeting as a

12  result of these acts of non-compliance.  (Id. at ¶ 62.)  Plaintiffs seek declaratory

13  relief voiding the Proxy Solicitation and the June 13, 2005 Alpha Spacecom

14  shareholders special meeting as a result of the aforementioned noncompliance.

15  (Id. at ¶ 73)

16

17  _____

18          which directors of the registrant, other than an
        investment company registered under the Investment
19      Company Act of 1940, are to be elected, it shall be
        accompanied or preceded by an annual report to security
20      holders:
21       (1) The annual report shall contain the information
        specified in paragraphs (b)(1) through (b)(11) of Rule
22      14a-3 (§ 240.14a-3 of this chapter.) . . .
        NOTE TO SMALL BUSINESS ISSUERS – . . . Small
23      business issuers using the transitional small business
        issuers disclosure format . . . shall provide only the
24      financial statements required to be filed in their most
        recent Form 10-KSB.
25
26  17 C.F.R. § 240.14c-3
27
28                              . 11

### 2. Declaratory Relief Against SEC

All small businesses such as Alpha Spacecom must file a Form 10-KSB along with annual reports and transition reports, pursuant to Sections 13 and 15(d) of the Williams Act; failure to file will result in the de-listing of Alpha Spacecom. (Id. at ¶ 77.) Plaintiffs contend that the Colorado order does not actually give Hu exclusive control over Alpha Spacecom's SEC filing codes (which must accompany the filings in order for the SEC to accept them). (Id. at ¶ 78.) Plaintiffs have attempted to file a Form 10-KSB for Alpha Spacecom that the SEC has rejected because Alpha Spacecom management lacked the requisite SEC filing codes (which are in Hu's possession). (Id. at ¶¶ 79-81.) Plaintiffs seek a judicial determination allowing Alpha Spacecom to file its Form 10-KSB either manually or electronically. (Id. at ¶ 84.) Alternatively, Plaintiffs seek an order requiring the SEC to disclose to Alpha Spacecom management (other than Hu) the necessary filing codes to enable Alpha Spacecom to file its Form 10-KSB. (Id.) Alternatively, Plaintiffs seek an order requiring the SEC to provide alternate filing codes to enable Alpha Spacecom to file its Form 10-KSB. (Id.)

### C. Procedural Summary

On May 3, 2005, Tridon Trust filed the Original Complaint in the United States District Court for the Central District of California.[6]

On this same date, Tridon Trust filed an Ex Parte Application for a Temporary Restraining Order and Order to Show Cause. This Court denied the Application without prejudice on that same date.

---

[6]Tridon Trust was the sole plaintiff in the original complaint. The original defendants were Hu, Alpha Sky, and ASC. In the First Amended Complaint, Alpha Spacecom was added as a plaintiff, Alpha Sky and ASC were dropped as defendants, and the SEC was added as a defendant.

1    On May 23, 2005, Defendants Hu and Alpha Sky filed a Notice of
2    Motion and Motion to Dismiss Action pursuant to Federal Rules of Civil
3    Procedure 12(b) (2) (for lack of personal jurisdiction) and 12(b) (3) (for improper
4    venue).

5    On June 21, 2005,this Court ordered that the Motion to Dismiss
6    Action be taken under submission upon the expiration of time for filing briefs.

7    On June 21, 2005, Plaintiffs Tridon Trust and Alpha Spacecom filed
8    the First Amended Complaint in the United States District Court for the Central
9    District of California.

10    On June 24, 2005, Defendant Hu filed a Notice of Motion, Motion to
11    Dismiss Action pursuant to Federal Rules of Civil Procedure 12(b) (2) (for lack of
12    personal jurisdiction) and 12(b) (3) (for improper venue), and the Hu Declaration.
13    Defendant subsequently withdrew this Motion on July 15, 2005.

14    On July 8, 2005 Defendant Hu filed a Notice of Motion, Motion to
15    Dismiss Action pursuant to Federal Rules of Civil Procedure 12(b) (2) (for lack of
16    personal jurisdiction) and 12(b) (3) (for improper venue), and the Hu Declaration.
17    This motion is currently before this Court.

18    **II.    Discussion**

19    Hu seeks to dismiss this action on the basis that this Court lacks
20    personal jurisdiction over him and that venue is improper because there has been
21    no actual contact in California, much less a "substantial part of the events or
22    omissions giving rise to the claim." 28 U.S.C. § 1391(b)(2). After a careful review
23    of the record, this Court finds dismissal for lack of personal jurisdiction or
24    improper venue unwarranted.

25    **A.    Standard**

26    **1.    Personal Jurisdiction**

27

28                                            13

1    In order to maintain this action in the Central District, Plaintiffs must
2  meet the venue requirements of 28 U.S.C. § 1391 and must establish that this
3  Court has personal jurisdiction over Hu. See FDIC v. British-American Ins. Co.,
4  Ltd., 828 F.2d 1439, 1441 (9th Cir. 1987).  In order to establish personal
5  jurisdiction over a nonresident defendant, a plaintiff must show that the forum
6  state's jurisdictional statute confers personal jurisdiction over the defendant, and
7  that the exercise of jurisdiction accords with constitutional principals of due
8  process. See Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987).  Because
9  California Civil Procedure Code Section 410.10 extends jurisdiction to the
10 maximum extent permitted by due process, the state and due process jurisdictional
11 inquiries can be conducted as one analysis. See Cal. Civ. Proc. Code § 410.10
12 (West 1973).

13    Due process requires that a non-resident defendant have sufficient
14 minimum contacts with the forum state so that "maintenance of a suit does not
15 offend traditional notions of fair play and substantial justice." International Shoe
16 Co. v. Washington, 326 U.S. 310, 316 (1945).  Courts may exercise either general
17 or specific personal jurisdiction over a nonresident defendant. See FDIC, 828
18 F.2d at 1442.

19    On a motion to dismiss for lack of personal jurisdiction, a plaintiff
20 need only make a prima facie showing that personal jurisdiction exists. See Data
21 Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir.
22 1977).

23    **a.    General Jurisdiction.**

24    General jurisdiction exists when a nonresident defendant has
25 "substantial, continuous and systematic" activities with the forum state, even if the

26

27

28                                    14

1   cause of action is unrelated to these forum activities.  See Perkins v. Benquet

2   Consolidated Mining Co., 342 U.S. 437 (1952).

3               **b.      Specific Jurisdiction.**

4               If a defendant's contacts with the forum state are not substantial or

5   continuous and systematic, this Court may only exercise jurisdiction over the

6   defendant if the alleged activities occurred in the forum state.  See Brand. v.

7   Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986).  In order to confer specific

8   personal jurisdiction in this Court, a plaintiff must show that:

9               (1) the nonresident defendant purposefully directed activities or

10              consummated transactions with the forum or residents thereof,

11              or performed some act by which he purposefully availed

12              himself of the privilege of conducting activities in the forum,

13              thereby invoking the benefits and protections of its laws;

14              (2) the claim arises out of or relates to the defendant's forum

15              related contacts; and

16              (3) the exercise of jurisdiction is reasonable, meaning that it

17              comports with fair play and substantial justice.

18  Data Disc, 557 F.2d at 1287.

19              Where a defendant asks the Court to dismiss the action based only on

20  declarations, "the plaintiff need make only a prima facie showing of jurisdictional

21  facts to withstand the motion to dismiss." Ballard v. Savage, 65 F.3d 1495, 1498

22  (9th Cir. 1995); See Data Disc, 557 F.2d at 1285.  To satisfy this prima facie

23  standard, "the plaintiff need only demonstrate facts that if true would support

24  jurisdiction over the defendant." Ballard, 65 F.3d at 1498.

25              **2.      Proper Venue**

26

27

28                                      15

1           "An alien may be sued in any district." 28 U.S.C. § 1391(d).  Venue

2 is proper in a civil action against the United States, one of its agencies, or one of

3 its officers in the judicial district where "the plaintiff resides if no real property is

4 involved in the action." 28 U.S.C. § 1391(e)(3).

5     **B.    Analysis**

6           Plaintiffs introduce two theories upon which this Court might

7 exercise specific jurisdiction over Hu.  First, they argue that Hu had sufficient

8 minimum contacts with California stemming from the SEA negotiations conducted

9 between Tridon Trust, Tridon Enterprises, and Loeb (on behalf of ASC).  Second,

10 Plaintiffs assert that this Court may exercise personal jurisdiction over Hu

11 pursuant to 15 U.S.C. § 78(aa).[7]  As explained below, Plaintiffs fail on their first

12 theory but succeed on their second.

13       **1.    Plaintiffs Cannot Establish Personal Jurisdiction over Hu**

14                 **Stemming from the SEA Negotiations**

15           This Court may not exercise personal jurisdiction over Hu stemming

16 from the SEA negotiations in California.  Plaintiff's claims against Hu arise

17 directly out of ASC's contacts with this forum.  ASC purposefully availed itself of

18 the protections of California law by enlisting the Loeb attorneys to negotiate the

19 SEA on its behalf.  However, ASC's corporate actions may not be imputed to Hu,

---

21     [7]Section 27 of the Williams Act provides:

22         Any suit or action to enforce any liability or duty created
        by this chapter or rules and regulations thereunder, may

23         be brought in any such district [wherein any act or
        transaction constituting the violation occurred] or in the

24         district wherein the defendant is found or is an inhabitant
        or transacts business, and process in such cases may be

25         served in any district of which the defendant is an
        inhabitant or wherever the defendant may be found.

27 15 U.S.C. § 78(aa).

28                       16

1 | individually.  Thus, this Court may not base its exercise of personal jurisdiction

2 | over Hu on the SEA Negotiations.

3 |           **a.**    **Claims Arise out of Forum-Related Contacts**

4 |        The negotiations leading up to, and subsequent entrance into, the

5 | SEA were a "but for" cause of Hu's alleged violations of the Williams Act.  The

6 | Ninth Circuit recognizes the "but for" test set out in <u>Shute v. Carnival Cruise</u>

7 | <u>Lines</u> 897 F.2d 377, 385-86 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585

8 | (1991) as the minimum standard for determining whether a claim arises out of a

9 | defendant's contacts with the forum.[8]  <u>See, e.g.</u>, <u>Omeluk v. Langsten Slip &</u>

10 | <u>Babyggeri A/S</u>, 52 F.3d 267, 271-72 (9th Cir. 1995).  This Court must determine

11 | whether, but for Hu's contact with California, would Hu have harmed Plaintiffs?

12 | <u>See</u> <u>Ballard</u>, 65 F.3d at 1500; <u>See</u> <u>Cubbage v. Merchent</u>, 744 F.2d 665, 670 (9th

13 | Cir. 1984) (solicitation of patients in California by Arizona doctor was but for

14 | cause of medical malpractice that occurred in Arizona); <u>See also</u> <u>Shute</u>, 897 F.2d

15 | at 386 (solicitation of business in Washington was but for cause of slip and fall

16 | occurring aboard a cruise ship based out of Florida while in international waters

17 | off of the coast of Mexico).

18 |        The "but for" test requires that the wrongful act, and not just the

19 | realization of the harm, stem from Hu's contacts with the forum state.  <u>See</u>

20 | 

21 |     [8]The Ninth Circuit explicitly adopted the "but for" test in <u>Shute v. Carnival</u>

22 | <u>Cruise Lines</u>, 897 F.2d 377 (9th Cir. 1990) *rev'd on other grounds*, 499 U.S. 585 (1991).  The Supreme Court reversed the holding of the Ninth Circuit without

23 | addressing the appropriateness of the "but for" test.  However, the Court did not

24 | limit its reversal to the other aspects of the Ninth Circuit's holding.  Since the constitutional issue is whether the "but for" test, which is a lower standard than the

25 | "proximate cause" test, sufficiently protects the Fourteenth Amendment Due

26 | Process rights of Hu, dismissal for failure to meet the "but for" standard does not trigger a constitutional question.  <u>See</u> <u>Omeluk</u>, 52 F.3d at 271-72.

27 | 

28 |                          17

1 Harrison v. Butler, 1997 U.S. App. Lexis 33662, 9 (9th Cir. 1997); Cf. Prejean v.

2 Sonatrarch, Inc., 652 F.2d 1260, 1270, n. 21 (5th Cir. 1981) (the critical element is

3 that the defendant's contact with the forum state placed the defendant within

4 "tortious striking distance" of the plaintiff).[9] "Only contacts occurring prior to the

5 event causing the litigation may be considered." Farmers Ins. Exch. v. Portage La

6 Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990).

7       Hu could not have made the alleged violations of the Williams Act

8 without having first gained control of Alpha Spacecom. Hu gained control of

9 Alpha Spacecom through the SEA. The SEA resulted from the cumulative

10 progress made during seven to eight months of meetings and negotiations, many of

11 which were held in California. Since neither Plaintiffs nor Hu indicate the relative

12 importance of individual meetings and negotiations (i.e. those conducted in

13 California versus those conducted elsewhere) in arriving at the final SEA, this

14 Court considers the negotiations collectively and attributes weight of importance

15 equally. Therefore, this Court finds that the California negotiations were a "but

16 for" cause of Plaintiffs' causes of action against Hu.

17       **b.    Purposeful Availment**

18       Plaintiffs contend that Hu purposefully availed himself of the

19 protections of California law by sending agents into this forum to negotiate the

20 terms and conditions of the SEA on his behalf. When a defendant challenges

21 personal jurisdiction, a plaintiff is "obligated to come forward with facts, by

22 affidavit or otherwise, supporting personal jurisdiction." Amba Mktg. Sys., Inc.

23

24       [9]The Ninth Circuit adopted the "but for" test in Shute in accordance the
25 Fifth and Sixth Circuits' interpretations of the "but for" test (as opposed to the
"proximate cause" approach favored by the First and Eighth Circuits). 897 F.2d at
26 385. Therefore, this Court may rely upon the reasoning and analysis of the Prejean
27 Court in determining the contours of the "but for" test. Id.

28                                  18

1  v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977). If the district court

2  determines jurisdiction solely on written materials without conducting an

3  evidentiary hearing, the plaintiff need only make a prima facie showing that

4  jurisdiction is appropriate. Ballard, 65 F.3d 1498.

5         Plaintiffs' declarations indicate that ASC employed the Loeb

6  attorneys.  However, Defendant's declarations indicate that the Loeb attorneys

7  worked for Brick as counsel for Tridon Enterprises.  All factual disputes in the

8  evidence presented (e.g. declarations, affidavits, and exhibits) are resolved in

9  favor of the plaintiff. AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588

10  (9th Cir. 1996).  For the purposes of determining jurisdiction, this Court assumes

11  that the Loeb attorneys represented ASC in the SEA negotiations.

12         Thus, ASC purposefully availed itself of the protections of California

13  law when it engaged the Loeb attorneys to negotiate the SEA on its behalf.  The

14  Loeb attorneys were not just advisors to ASC.  They acted as ASC's agents in

15  California and played a lead role in the negotiation of the SEA.  Minimum

16  contacts of a nonresident employer's agents or employees ordinarily are imputed

17  to the employer. Sher v. Johnson 911 F.2d 1357, 1366 (9th Cir. 1990).  Therefore,

18  the question becomes whether a series of meetings and negotiations occurring over

19  a 7-8 month period in Southern California constitute purposeful availment.  This

20  Court finds such contact sufficient, and therefore determines that ASC has the

21  requisite minimum contact with Los Angeles to warrant the exercise of personal

22  jurisdiction over ASC.

23         **c.    ASC's Actions May Not Be Imputed to Hu**

24         Plaintiffs brought suit against Hu as an individual, not against the

25  corporate entities ASC and Alpha Sky.  Thus, Plaintiffs were required to

26  demonstrate that Hu individually had sufficient minimum contacts with California

27

28                            19

1  to warrant this Court's exercise of jurisdiction over Hu. Cf. Sher, 911 F.2d at

2  1366 ("contacts of the partnership may [not] be imputed to the partners because

3  the reverse is true"). Therefore, Plaintiffs' evidence regarding the negotiations

4  leading up to the SEA could confer personal jurisdiction over ASC but not Hu.

5

6          **2.      Plaintiffs Establish Personal Jurisdiction over Hu**

7                  **Stemming From the Williams Act**

8          The Williams Act merely expands the geographic region within

9  which a defendant must have sufficient minimum contacts to warrant the exercise

10  of personal jurisdiction. "Where a federal statute such as Section 27 of the Act

11  confers nationwide service of process, the question becomes whether the party has

12  sufficient contacts with the United States, not any particular state." Securities

13  Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1315 (9th Cir. 1985), *rev'd*

14  *on other grounds*, 112 S.Ct. 1311 (1992) (citations omitted). "So long as

15  defendant has minimum contacts with the United States, Section 27 of the Act

16  confers personal jurisdiction over [the defendant]." Id. at 1316. Plaintiffs need

17  only show that Hu had minimum contacts with the United States to support this

18  Court's exercise of personal jurisdiction.[10]

19

20

21          [10]Courts have questioned the viability of nationwide personal jurisdiction

22  for claims seeking declaratory judgment. Pacific Life Ins. Co. v. Spurgeon, 319

23  F.Supp.2d 1108 (C.D.Cal. 2004) ("Securities Act's and Securities Exchange Act's

    nationwide service of process provisions did not by themselves confer personal

24  jurisdiction in action brought by variable annuity offeror seeking **declaratory**

25  **judgment** that its practices regarding mutual funds offered under annuity

    comported with Acts; district court had jurisdiction over defendant investors only

26  if investors' contacts with state where action was brought were sufficient to

27  support jurisdiction under state's long-arm statute.") (emphasis added).

28                                          20

1        The Williams Act does not alter the degree of minimum contacts

2   required for the Court to exercise jurisdiction. Thus, if a defendant has

3   purposefully availed himself of the benefits and protections of doing business in

4   the United States, and if the plaintiff's claims arise out of the defendant's contacts,

5   and if the exercise of jurisdiction is reasonable, a court may exercise specific

6   jurisdiction over a defendant who has allegedly violated the Williams Act.

7   Similarly, if a defendant's contacts with the United States are "substantial,

8   continuous and systematic," a court may exercise general jurisdiction over a

9   defendant who has allegedly violated the Williams Act.

10        **a.**    **Hu has Sufficient Minimum Contacts with the United**

11            **States**

12        Hu's allegedly-faulty SEC filings establish the requisite degree of

13   minimum contacts with the United States to support personal jurisdiction in this

14   forum. Hu's contact suffices because he purposefully directed his actions towards

15   the United States, see Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984),

16   he sought to profit from those actions see Kulko v. California Superior Court, 436

17   U.S. 84, 96 (1978), and he could have reasonably foreseen being haled into an

18   American Court to answer for those actions. See Worldwide Volkswagen Corp. v.

19   Woodson, 444 U.S. 286, 297 (1980).

20        Hu purposefully directed numerous, allegedly-faulty SEC filings into

21   the United States (Pre 14C, Def 14C, and Def 14C/A).[11] The allegedly-faulty SEC

22   filings came directly from Hu, acting in his official capacity as CEO of Alpha

23

24        [11]Since this Court relies on the SEC filings to confer specific jurisdiction

25   and not general jurisdiction, this cause of action is distinguishable from Wiwa v.
Royal Dutch Petroleum Co., where the Second Circuit found that "activities

26   necessary to maintain a stock exchange listing . . . are insufficient to confer

27   jurisdiction." 226 F.3d 88, 97 (2nd Cir. 2000).

28                     21

Spacecom.  Plaintiffs allege that Hu intentionally excluded Tridon Trust from the special shareholder meeting (or alternatively excluded its proxy), to facilitate his efforts to elect new directors for Alpha Spacecom, reincorporate the company from Colorado to Nevada, and adopt a reverse stock split, unfettered by the gripes of a wary but powerful shareholder.  (First Amd. Compl. Ex. 2.).  Finally, Hu could have reasonably foreseen the likelihood of defending an action in the United States because he filed documents with an American regulatory agency (SEC) on behalf of Alpha Spacecom and because he had already been forced to defend the Colorado Action.  Thus, Hu purposefully availed himself of the benefits and protections of the laws of the United States, subjecting himself to personal jurisdiction in California pursuant to 15 U.S.C. § 78(aa).

> **b.    Plaintiffs' Claims Arise Out of Hu's Minimum Contacts**

Plaintiffs' claims arise directly out of Hu's contacts with the United States.  Plaintiffs' claims seek to rescind elements of Hu's SEC filings as well as declaratory relief for harm stemming from those filings.  Thus, Plaintiffs' claims satisfy the "but for" standard recognized by the Ninth Circuit.

> **c.    Exercise of Jurisdiction in California is Reasonable**

As Hu aptly points out, factors contributing to the reasonableness of jurisdiction include:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy;

1    (6) the importance of the forum to the plaintiff's interest

2    In convenient and effective relief; and (7) the existence

3    of an alternative forum.

4  Core-Vent Corp. v. Nobel Inds. AB, 11 F.3d 1482, 1487-88 (9th Cir. 1994).  After

5  carefully weighing these factors, this Court finds that it may reasonably exert

6  jurisdiction over Hu.

7          It is reasonable to maintain this action in this district because it does

8  not particularly inconvenience Defendants (compared to any other judicial

9  district), and it is convenient for Plaintiffs.  Hu is a foreign national represented by

10  a Beverly Hills, California law firm.  The burden of defending this action in this

11  forum is not markedly higher than defending it in any other judicial district of the

12  United States.  The third Core-Vent factor is irrelevant because Hu is an alien.

13  California has a strong interest in resolving this dispute because the alleged harm

14  befell a California corporation.  Plaintiffs have a strong interest in maintaining this

15  action in this judicial district because Tridon Trust is located in this district.

16          Finally, there is no alternative forum.  Alpha Spacecom is

17  incorporated under Colorado law, but neither party has indicated that there are any

18  meaningful benefits to proceeding in that forum.  The individuals who have thus

19  far contributed declarations to this cause of action are scattered across the United

20  States and East Asia.  California is not only the most efficient forum for the

21  resolution of this dispute, it is the only forum where the parties might resolve this

22  dispute.  Therefore, this Court may reasonably exercise specific jurisdiction over

23  Hu, and dismissal for lack of personal jurisdiction is unwarranted.

24          **3.    Plaintiffs Cannot Establish General Jurisdiction Over Hu**

25          Hu's contacts with either California or the United States do not

26  warrant general jurisdiction.  Plaintiffs allegations suggest that Hu only had

27

28                                      23

1 | limited contacts with the United States. Hu's contacts with the United States

2 | focused on a singular objective: strengthening his hold over Alpha Spacecom.

3 | "Purposeful availment" (the degree of contact with a forum necessary to establish

4 | specific jurisdiction) is a lesser degree of contact than "substantial, continuous and

5 | systematic" (the degree of contact with a forum necessary to establish general

6 | jurisdiction). See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.

7 | 408, 414-15 (1984). Thus, Plaintiffs have demonstrated purposeful availment but

8 | not the requisite contact necessary for general jurisdiction.

9 |               **4.     Venue Is Proper in this District**

10 |              Hu argues that venue is improper pursuant to 28 U.S.C. § 1391(b)(2).

11 | He is incorrect. The question of venue in this action is not controlled by Title

12 | XXVIII; it is controlled by Title XV. Even if venue here was improper under Title

13 | XV, this cause of action would be controlled by 28 U.S.C. § 1391(d) and 28

14 | U.S.C. § 1391(e) as opposed to subsection (b) because Defendants are an alien and

15 | an agency of the United States.

16 |              Venue is proper in the Central District of California pursuant to the

17 | Williams Act. An "act or transaction constituting the violation occurred" in this

18 | judicial district. 15 U.S.C. § 78(aa). The act in question was an error of omission

19 | - Hu failed to solicit a proxy statement from Tridon Trust in an effort to curtail

20 | Tridon Trust's authority as shareholders of Alpha Spacecom. This omission

21 | caused certain SEC filings to violate the Williams Act. "To establish jurisdiction

22 | and venue. . . the defendant need not be physically present in the forum district nor

23 | need he commit more than a single act in the district if that act is important to the

24 | consummation of the scheme." Hilgeman v. National Ins. Co. of America, 547

25 | F.2d 298, 302 (5th Cir. 1977). Since the failure to solicit a proxy statement from

26 |

27 |

28 |                                         24

1 | Tridon Trust was a key component of the illegality of the SEC filings, venue is

2 | appropriate in the judicial district where the omission occurred.

3 |       Even if Plaintiffs could not sufficiently demonstrate the connection

4 | between the alleged violations of the Williams Act and California, the question of

5 | venue is rendered moot by 28 U.S.C. § 1391(d), which states that "An alien may

6 | be sued in any district." It is an undisputed fact that Defendant Hu is a foreign

7 | national and thus an alien. Defendant SEC is an agency of the United States.

8 | Venue in an action against an agency of the United States is proper in any judicial

9 | district where (1) the defendant resides, (2) a substantial portion of the events and

10 | omissions central to the claim occurred, or (3) where the plaintiff resides when no

11 | real property is involved in the claim. It is undisputed that Plaintiff Tridon Trust

12 | resides in the Central District of California and that no real property is involved in

13 | this dispute. Therefore, venue here is proper, and dismissal is unwarranted.

14 | **III.**   **Conclusion**

15 |       Accordingly, Defendant Hu's Motions to Dismiss for Lack of

16 | Personal Jurisdiction and Improper Venue are **DENIED.**

17 |

18 |       IT IS SO ORDERED.

19 |

20 | DATED:   AUG - 1 2005

                  **DICKRAN TEVRIZIAN**

21 |                          Dickran Tevrizian, Judge

                         United States District Court

22 |

23 |

24 |

25 |

26 |

27 |

28 |             25